Gregory J. HEMPHILL, Petitioner-
Appellant,

v.

R. I. MOSELEY, Warden, U. S. Peni-
tentiary, Leavenworth, Kansas,
Respondent-Appellee.

No. 293-70.

United States Court of Appeals,
Tenth Circuit.

April 13, 1971.

Jonathan M. Landers, Lawrence, Kan., for petitioner-appellant.

Michael A. Katz, Captain, JAGC, Office of The Judge Advocate General, Dept. of the Army, Washington, D. C. (Robert J. Roth, U. S. Atty., Wichita, Kan., Edward H. Funston, Asst. U. S. Atty., Topeka, Kan., Arnold I. Melnick, Lieutenant Colonel, JAGC, on the brief) for respondent-appellee.

Before PHILLIPS, PICKETT and HILL, Circuit Judges.

HILL, Circuit Judge.

Hemphill is an inmate in the United States Penitentiary at Leavenworth, having been convicted by a military court of assault with intent to commit rape. The conviction was affirmed by a United States Army Board of Review and leave to appeal to the United States Court of Military Appeals was denied.

In the instant habeas corpus case, Hemphill alleges that the military court was without jurisdiction to try him for the crime inasmuch as it was a non-military offense committed off-post while on leave. This allegation draws into question the applicability of O'Callahan v. Parker, 395 U.S. 258, 89 S.Ct. 1683, 23 L.Ed.2d 291 (1969). The district court, 313 F.Supp. 144, denied the petition on two grounds: (1) that O'Callahan does not apply to offenses committed in a foreign country; and (2) that it was not shown that Hemphill had exhausted his military remedies.

■ Ordinarily habeas corpus petitions from military prisoners must not be entertained by federal civilian courts until all available remedies within the military court system have been invoked in vain. Noyd v. Bond, 395 U.S. 683, 89 S.Ct. 1876, 23 L.Ed.2d 631 (1969); Gusik v. Schidler, 340 U.S. 128, 71 S.Ct. 149, 95 L.Ed. 146 (1950); Noyd v. Bond, 402 F.2d 441 (10th Cir. 1968); Noyd v. McNamara, 378 F.2d 538 (10th Cir. 1967). But the Supreme Court has indicated that it is especially unfair to require exhaustion of military remedies when the complainant raises a substantial argument denying the right of the military to try him at all. Noyd v. Bond, 395 U.S. 683, 696 n. 8, 89 S.Ct. 1876, 23 L.Ed.2d 631 (1969). That is the precise issue in the instant appeal, and for that reason, we will consider the applicability of O'Callahan to Hemphill's situation.

■ Our decision in Noyd is unaffected by the disposition of the exhaustion argument here. In Noyd the appellant was not challenging the jurisdiction of the military to hear his case, nor had the military review boards completed considering the case. In those circumstances, the rule remains intact that armed forces personnel must exhaust available military review procedures before bringing a federal habeas corpus action.

Although Hemphill's conviction came some three years prior to the O'Callahan decision, because of factual distinctions the issue of O'Callahan's retroactive application need not be considered. Relford v. Commandant, U. S. Disciplinary Barracks, 401 U.S. 355, 91 S.Ct. 649, 28 L.Ed.2d 102 (1971). Hemphill, just as O'Callahan, was convicted of a crime which occurred off-base while he was on leave and out of uniform. But whereas O'Callahan's 1956 crime allegedly occurred in the Territory of Hawaii, a United States possession operating under the Constitution and laws of the United States, Hemphill's act transpired in Germany. That fact sharply distinguishes the two cases.

A very important consideration in the O'Callahan decision is that the crime was committed on American territory where civilian courts could afford the defendant the full panoply of constitutional protections. "In O'Callahan * * * the Court held that a court-martial may not try a member of our armed forces charged with attempted rape of a civilian, with housebreaking, and with assault with intent to rape, when the alleged offenses were committed off-post *on American territory,* when the soldier was on leave, and *when the charges could have been prosecuted in a civilian court.*" Relford v. Commandant, U. S. Disciplinary Barracks, 401 U.S. 355, 356, 91 S.Ct. 649, 651, 28 L.Ed.2d 102 (1971) [emphasis added].

■ When a crime occurs on foreign soil, United States civilian courts are generally not available to vouchsafe the rights of the accused. *See* Gallagher v. United States, 423 F.2d 1371, 1374 (Ct.Cl.1970). In the first place, with few exceptions, the federal criminal statutes do not apply to extraterritorial acts and thus they are not "offenses against the United States" over which the federal district courts have jurisdiction. Bell v. Clark, 308 F.Supp. 384, 388 (E.D.Va. 1970); United States v. Keaton, 19 USCMA 64, 41 C.M.R. 64 (1969). And in addition to the problematical jurisdiction issue, the question of where venue would lie is an imposing and unanswered query. In short, we conclude that mili-

tary jurisdiction over crimes committed by servicemen in foreign countries is left untouched by O'Callahan.

The only argument made by appellant on this point is that the Supreme Court, in Reid v. Covert, 354 U.S. 1, 77 S.Ct. 1222, 1 L.Ed.2d 1148 (1957); Kinsella v. United States ex rel. Singleton, 361 U.S. 234, 80 S.Ct. 297, 4 L.Ed.2d 268 (1960); McElroy v. United States ex rel. Guagliardo, 361 U.S. 281, 80 S.Ct. 305, 4 L.Ed.2d 282 (1960); Grisham v. Hagan, 361 U.S. 278, 80 S.Ct. 310, 4 L. Ed.2d 279 (1960); and Toth v. United States ex rel. Quarles, 350 U.S. 11, 76 S.Ct. 1, 100 L.Ed. 8 (1955), held that military courts have no jurisdiction over crimes committed in foreign countries. Unfortunately the rationale in each of those cases hinges on a very different fact: "We have held in a series of decisions [Reid, Kinsella, McElroy, Grisham and Toth] that court-martial jurisdiction cannot be extended to reach any person not a member of the Armed Forces at the times of both the offense and the trial." O'Callahan v. Parker, 395 U.S. at 267, 89 S.Ct. at 1687. Thus there is no comfort in those decisions for Hemphill.

█ Appellant's appointed counsel argues on appeal that the military court procedures violated Hemphill's constitutional rights (a) to trial by jury; (b) to compulsory process; (c) to exercise the right to not give testimony against himself and to have counsel; and (d) to be free from command influence. We have carefully scrutinized Hemphill's pro se habeas corpus petition as well as the Memorandum and Order of the trial court. With the exception of the trial by jury argument, there is no indication that any of these arguments was made to the trial court, and we will not first consider them on appeal. The trial by jury contention was urged concomitantly with and dependent upon the argument on military jurisdiction which we have heretofore decided against appellant.

Affirmed.